IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JULIO PEREZ                                                                               PLAINTIFF

V.                                          NO. 09-5286

MICHAEL J. ASTRUE,
Commissioner of Social Security Administration                       DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Julio Perez, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision See 42 U.S.C. § 405(g).

**I. Procedural Background:**

Plaintiff filed an application for SSI on May 16, 2007, alleging an inability to work since January 1, 2006, due to Schizophrenia. (Tr. 101, 106). An administrative hearing was held on February 12, 2009, at which Plaintiff appeared with counsel and his cousin. (Tr. 7-30).

By written decision dated April 20, 2009, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe - Schizophrenia and Psychosis. (Tr. 38). However, after reviewing all of the evidence presented, he determined that Plaintiff's

impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 38). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant has moderate limitations in concentration, persistence, and pace. Specifically, the claimant is moderately limited in the ability to understand, remember, and carry out detailed instructions, respond appropriately to usual work situations and routine work change, and interact appropriately with the public. "Moderately limited" means that more than a slight limitation exists, but the claimant can still perform in a satisfactory manner. Furthermore, the claimant can only do work where interpersonal contact is incidental, the complexity of tasks is learned and performed by rote, few variables and little judgment are involved, and supervision is simple, direct, and concrete.

(Tr. 40). With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform work as a hand packager, industrial cleaner, and poultry production worker. (Tr. 44).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on October 14, 2009. (Tr. 103). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. 7, 8).

**II. Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence

exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience

in light of his residual functional capacity (RFC).  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**III. Discussion**

In this case, only Plaintiff's mental limitations are at issue.  The medical records indicate that Plaintiff began treatment for his mental impairments at Ozark Guidance, Inc.(OG), as early as November of 2002.

On December 9, 2005, Plaintiff was ordered to undergo treatment for competency restoration at the Arkansas Department of Human Services, by an order of the Circuit Court of Washington County, filed November 15, 2005. (Tr. 166).  The underlying criminal charges were of Fleeing and Theft by Receiving. (Tr. 166).  Upon admission, the diagnosis was: Axis I - Rule out psychotic disorder;  Axis II - Rule out ASPD ( Anti-Social Personality Disorder);  Axis III - Rule out delusion;  Axis IV - mod/legal;  Axis V - GAF - 30. (Tr. 243).  Plaintiff was unwilling to cooperate and was unresponsive for much of the time he spent there, and was noted as engaging in selective mutism, which he repeated until near the end of his hospitalization. (Tr. 163).  He was noted as refusing to speak with clinicians until he was confronted by his mother on the phone during a team meeting near the end of his hospitalization. (Tr. 164).  Upon discharge on February 7, 2006, Plaintiff was diagnosed with:

    Axis I        Malingered Selective Mutism
                      History of Substance-Induced Psychotic Disorder
                      Cannabis Dependence, in remission in a controlled environment
                      Alcohol abuse, in remission in a controlled environment
                      Cocaine abuse, in remission in a controlled environment
                      Amphetamine abuse, in remission in a controlled environment
                      History of, and Rule out schizophrenia
    Axis II       Antisocial personality traits, rule out disorder
    Axis III      None

      Axis IV        Stressors : Moderate (Legal)
      Axis V         GAF on discharge - 55-60

(Tr. 165). On May 11, 2007, Ester Arejola Salvador, M.D., M.P.H., of OG, did a psychological assessment and assessed Plaintiff with: Psychotic Disorder NOS; rule out substance induced psychosis; alcohol abuse; rule out paranoid schizophrenia; and gave Plaintiff a GAF of 50-55. (Tr. 189). Plaintiff continued to be counseled at OG in May , 2007 by Audrey Adams, LCSW, and Dr. Salvador. (176-179, 182-185, 186-190).

On August 27, 2007, a Mental Diagnostic Evaluation and Intellectual Assessment was conducted by Mary J. Sonntag, Psy. D., who found that although Plaintiff had been diagnosed at several mental health settings with schizophrenia, he was currently medicated and performing fairly well on medication. Therefore, Dr. Sonntag continued that diagnosis. She further found that Plaintiff had good capacity to: communicate and interact in a socially adequate manner; communicate in an intelligible and effective manner; cope with the typical mental/cognitive demands of basic work-like tasks; attend and sustain concentration on basic tasks; sustain persistence in completing tasks; and good capacity to complete work-like tasks within an acceptable time frame. (Tr. 197).

A Mental RFC Assessment was completed on October 9, 2007 by Kay M. Gale, where Dr. Gale found Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; where complexity of tasks was learned and performed by rote, with few variables, used little judgment; and where supervision required was simple, direct and concrete. (Tr. 217).

Subsequent to the above assessments, on January 9, 2008, Plaintiff was reported as

having broken everything in his mother's house, and after she kicked him out and his grandmother took him in, he burned her house down that morning. (Tr. 352). Plaintiff told Evelyn Weigel, M.S., LPE, at OG, that he was "all messed up" and that he was not hearing voices when he broke things in his mother's house and burned down his grandmother's house. He said that he used to come to OG and used to take medication, "but he quit coming and taking the medication because he was feeling better." He was wondering if Dr. Salvador would give him some samples. (Tr. 352).

During early 2008, Plaintiff continued to receive treatment from OG, and was reported as doing better on his medications. (Tr. 332-351). However, on October 16, 2008, Plaintiff was noted as not keeping appointments. (Tr. 330). He appeared to be stable at that time, but it was unclear whether he was medication compliant. (Tr. 330). At his November 19, 2008 visit to OG, Plaintiff apologized for not keeping his appointment since June, and reported that he had been getting samples and taking his medications. (Tr. 326). However, Dr. Salvador checked the computer and the last time he obtained samples of Campral was in May of 2008 and Invega in June of 2008. Plaintiff refused to continue with the Haldol Decanoate injection, but was willing to get back on Invega and Campra. (Tr. 326).

On January 14, 2009, Plaintiff was seen by Mary Ann Adams, APN, at OG, stating that he was depressed, and that he smashed his mother's television and entertainment center over the Christmas holidays. (Tr. 324). He was imprisoned for the behavior, and Lexapro 10 mg was added to his medications for depression. (Tr. 324).

What concerns the undersigned is the fact that the ALJ relied heavily upon the findings

of Dr. Mary Jane Sonntag when determining the limiting effects of Plaintiff's schizophrenia. He also concluded that with respect to Plaintiff's psychotic disorder, Plaintiff's condition could be controlled by medication. However, Dr. Sonntag's examination occurred on August 27, 2007, prior to his violent episodes of breaking items in his mother's house and burning his grandmother's house. Furthermore, the ALJ stated that Plaintiff's psychotic disorder and schizophrenia were controlled with medication, "and the limitations caused by the claimant's impairments increase when he does not take his medication and attend therapy." (Tr. 42). As was done by the ALJ in Pate-Fires v. Astrue, 564 F.3d 935 , 945 (8th Cir. 2009), the ALJ in the present case referenced instances in the record in which Plaintiff had indicated his understanding of the need to comply with his medication requirements to support his conclusion that he did not have a good reason for his medical noncompliance. However, the Court in Pate-Fires held:

> But the ALJ failed to make the critical distinction between Pate-Fires's awareness of the need to take her medication and the question whether her noncompliance with her medication was a medically-determinable symptom of her mental illness.

Id.

The Court finds that in the present case, based upon Plaintiff's more recent violent behavior and the questions surrounding his questionable compliance with medication, this matter should be remanded in order for the ALJ to have Plaintiff examined by a mental health expert and to obtain a Mental RFC Assessment by that examining expert. The ALJ should also determine whether Plaintiff's noncompliance with his medication was a medically-determinable symptom of his mental illness.

In addition, although Plaintiff's counsel and the ALJ discussed the absence of the VISTA

records in the proceedings, none of those records were obtained. Upon remand, Plaintiff's counsel is directed to procure the VISTA records and submit them to the ALJ for his review. Upon receiving the new Mental RFC Assessment and additional records, the ALJ should then re-evaluate Plaintiff's RFC.

## IV. Conclusion

Based upon the foregoing, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 14th day of February, 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE